UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No.: 15-39922 |
| | ) | |
| 401 LaSalle Lenders, LLC | ) | Chapter 11 |
| | ) | |
| Debtor | ) | Judge Jacqueline P. Cox |

## NOTICE OF MOTION

To:   See Attached Service List

**PLEASE TAKE NOTICE** that on **December 9, 2015** at the hour of 9:30 a.m., or as soon thereafter as counsel may be heard, I shall appear before Judge Cox in Courtroom 680 of the United States Bankruptcy Court, Everett McKinley Dirksen Building, 219 South. Dearborn St., Chicago, Illinois, or any other judge sitting such judge's place and stead, and shall then and there present the attached **MOTION TO VOID SALE IN VIOLATION OF THE AUTOMATIC STAY AND FOR OTHER RELIEF**, a copy of which is attached hereto and is hereby served upon you. You may appear and be heard if you choose.

/s/Karen J. Porter
(Atty No 6188626)
**PORTER LAW NETWORK**
230 West Monroe, Suite 240
Chicago, IL 60606
Phone: 312-372-4400
Fax: 312-372-4160

## CERTIFICATE OF SERVICE

I, Karen J. Porter, an attorney, certify that I caused a true and correct of this Notice and Motion to be served as indicated on the parties listed on the attached service list from my offices located at 230 West Monroe, Suite 240, Chicago, IL 60606 on December 3, 2015.

/s/Karen J. Porter
(Atty No 6188626)
**PORTER LAW NETWORK**
230 West Monroe, Suite 240
Chicago, IL 60606
Phone: 312-372-4400
Fax: 312-372-4160

1

**401 LaSalle Lenders, LLC**
**Case No.: 15-39922**
**Service List**

Via ecm electronic filing

Patrick S. Layng
Office of the United States Trustee
219 South Dearborn, 8th Floor
Chicago, IL 60604

Via facsimile to (312) 276-9285
Gregory J. Jordan
Jordan & Zito LLC
55 West Monroe St., Suite 3600
Chicago, IL 60603

Via facsimile to (312) 276-0035
Joseph D. Frank
FrankGecker LLP
325 N. LaSalle, Suite 625
Chicago, IL 60654

Via facsimile to (312) 276-0035
Jeremy C. Kleinman
FrankGecker LLP
325 N. LaSalle Street, Suite 625
Chicago, IL 60654

Via facsimile to (312) 980-1334
Richard M. Fogel
Shaw Fishman Glantz & Towbin LLC
321 N. Clark St., Suite 800
Chicago, IL 60654

Via facsimile to (312) 332-2781
Adam B. Rome
Greiman, Rome & Griesmeyer, LLC
2 North LaSalle St., Suite 1601
Chicago, IL 60602

Via facsimile to (312) 321-0990
Troy M. Sphar
Swanson, Martin & Bell, LLP
330 N. Wabash, Suite 3300
Chicago, IL 60611

Via facsimile to (630) 799-6901
Charles S. Stahl, Jr.
Swanson, Martin & Bell, LLP
2525 Cabot Drive, Suite 204
Lisle, IL 60532

Via facsimile to (312) 578-4939
Lawrence M. Benjamin
Neal, Gerber & Eisenberg
Two North LaSalle Street, Suite 2200
Chicago, IL 60602

Via regular mail to:

Mr. Michael Horrell
Manger and Member
401 LaSalle Lenders, LLC
401 South LaSalle, Suite 203
Chicago, IL 60605

Ms. Goriana Alexander
Manager and Member
401 LaSalle Lenders, LLC
611 Cambridge
Elmhurst, Il 60126

2

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No.: 15-39922 |
| | ) | |
| 401 LaSalle Lenders, LLC | ) | Chapter 11 |
| | ) | |
| Debtor | ) | Judge Jacqueline P. Cox |

## MOTION TO VOID SALE IN VIOLATION OF THE AUTOMATIC STAY AND FOR OTHER RELIEF

401 LaSalle Lenders, LLC (the "Debtor" or "401 Lenders") debtor and debtor in possession, herein moves this court pursuant to 11 U.S.C. §362 for relief from a violation of the automatic stay by Excel Acquistions, LLC and in support thereof respectfully states as follows:

### FACTUAL BACKGROUND

1. The court has jurisdiction of this matter pursuant to 28 U.S.C. §1334. Venue is proper pursuant to 28 U.S.C. §1409. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (G).

2. Debtor commenced a voluntary Chapter 11 bankruptcy case (the "Case") by filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §101 *et seq.* (the "Bankruptcy Code") on November 23, 2015 in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Court").

3. This chapter 11 case is related to the chapter 11 case no. 14-44983, filed by 401 Properties Limited Partnership ("401 Properties Case") which is pending before this court.

4. The 401 Properties Case concerns the reorganization and control of the real property located at 401 S. LaSalle Street, Chicago, Illinois (the "Property").

5. 401 Lenders is an Illinois limited liability company.

3

6. The 401 Lenders has an interest in the loan documents relating to the financing of the Property by Bridgeview Bank Group. 401 Lenders has an interest in two mortgage notes executed on March 10, 2009 by 401 Properties in favor of Bridgeview Bank Group. The first mortgage note is for the amount of $6,274,288.46. The second mortgage note is for the amount of $1,600,711.54. The mortgage notes are attached to this Motion as Exhibit A and B. On or about September 16, 2010, 401 Lenders acquired an interest in both mortgage notes from Bridgeview Bank Group as part of the assignment of certain agreements, documents, and instruments relating to the Property and the mortgage on the Property from Bridgeview Bank Group.

7. On January 16, 2015, 401 Properties filed its Schedule D. A copy of the Schedule D is attached to this Motion as Exhibit C. 401 Properties listed 401 Lenders as a secured creditor with a first mortgage and security interest, jointly held with Bridgeview Bank Group. 401 Properties listed 401 Lenders' claim amount as $15,232,056.32. The Debtor also listed Bridgeview Bank Group as holding the same claim in an unknown amount.

8. On November 3, 2015, Guterman Partners Energy, LLC filed a proof of claim in the 401 Properties Case. Guterman Partners Energy, LLC listed its claim amount as $15,232,056.32. A copy of Guterman's proof of claim is attached as Exhibit D (the "Guterman Claim").

9. The Guterman Claim was filed in response to an assignment agreement between 401 Lenders and Guterman Partners Energy, LLC. A copy of the 401 South LaSalle Agreement is attached to this Motion as Exhibit E.

10. On November 2, 2015, Excel Acquistions, LLC ("Excel") acquired Bridgeview Bank Group's claim. A copy of the Notice of Transfer of Claim No. 7 is attached to this Motion

4

as Exhibit F. On March 27, 2015, Bridgeview Bank Group had filed Claim Number 7-1 in the 401 Properties Case for an amount of $15,303,455.25.

11. There are ongoing disputes in the 401 Properties Case regarding the validity of the Bridgeview Claim which was acquired by Excel and the 401 Lenders claim which was sold by Excel in violation of the automatic stay. On July 9, 2015, Rock Solid Gelt Limited filed an adversary proceeding, case no.15-ap-00499, against 401 Properties, 401 LaSalle Lenders, LLC, Bridgeview Bank Group, Chicago Title Land Trust Company, and 330 South Wells, LLC. On July 14, 2015, 330 South Wells filed an adversary proceeding, case no. 15-ap-506, against 401 LaSalle Lenders and Bridgeview Bank Group. Both adversary proceedings seek to disallow Bridgeview Bank Group's claim and 401 Lenders' claim and are still pending before the Court.

12. On November 10, 2015, Excel issued a notice of a UCC sale of the Bridgeview loan documents, including the mortgage notes. A copy of the sale notice is attached to this Motion as Exhibit G. Excel planned to hold the sale on November 24, 2015.

13. On November 23, 2015, 401 LaSalle commenced this chapter 11 case imposing the automatic stay of 11 U.S.C. §362.

14. On November 23, 2015, the Debtor's attorney provided notice of the filing of 401 Lenders' chapter 11 case to Gregory Jordan ("Jordan"), the attorney for Excel, and Howard B. Samuels, a representative for Rally Capital Services, LLC. Copies of the notices of bankruptcy filing are attached to this Motion as Group Exhibit H.

15. On November 23, 2015, Jordan, sent an email to the Debtor's attorney, Karen Porter ("Porter") and others, regarding the UCC sale on November 24, 2015. A copy of the email is attached to this Motion as Exhibit I.

5

16. Prior to the sale on November 24, 2015, Porter sent a letter to Jordan by electronic transmission. A copy of the Debtor's attorney's letter is attached as Exhibit J.

17. On November 24, 2015, Excel proceeded with the UCC sale.

18. On December 1, 2015, Excel filed a notice of Transfer of Claim No. 10, which is the Guterman Claim, in 401 Properties' bankruptcy case. A copy of the Notice of Transfer of Claim No. 10 is attached to this Motion as Exhibit K.

### THE UCC SALE VIOLATED THE AUTOMATIC STAY

19. The Debtor requests that this court enter an order voiding the November 24, 2015 UCC sale because the sale was held in violation of the automatic stay.

20. Section 362(a) of the Code imposes an automatic stay which prohibited Excel from taking the following actions against the Debtor:

"**(3)** any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

**(4)** any act to create, perfect, or enforce any lien against property of the estate;

**(5)** any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title..."

21. The filing of the bankruptcy petition operates to stay all actions that seek to obtain possession of property of the estate, property from the estate, or to exercise control over property of the estate. *In re Nancy Hall-Walker*, 10 B 42783, 2011 (citing 11 U.S.C. §362(a)(3)).

23. "'The automatic stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another.'" *In re Nancy Hall-Walker*, 10 B

42783, 2011 (citing *Fidelity Mortg. Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 55 (2d Cir. 1976).

24. This Court has held that actions taken in violation of the automatic stay are deemed void. "It is well established in case law that acts taken in violation of the automatic stay imposed under Section 362(a) of the Bankruptcy Code are deemed void ab initio and lack effect." *Id.* (Citations omitted).

25. This Court has further held that deliberate actions "taken with knowledge of the facts giving rise to the automatic stay [are] sufficient to establish a willful violation of the stay..." *In re Benalcazar*, 283 B.R. 514, 531 (Bankr. N.D. Ill. 2002). Willfulness can be found even if the creditor believed itself justified in taking the actions that resulted in a violation the stay. *In re Sumpter,* 171 B.R. 835, 843 (Bankr. N.D. Ill.1994).

26. On November 24, 2015, the day after the Debtor filed its bankruptcy petition, Excel proceeded with its sale of the collateral and acted in violation of the automatic stay.

27. *In re Bialac*, 712 F.2d 426, 432 (C.A.9 (Ariz) 1993), HIC obtained a state court judgment against five members of the Bialac family jointly and severally. James Bialac had a one-sixth undivided interest in a note. On May 22, 1981, HIC gave notice of its intention to foreclose on the note which it held as collateral. Prior to the sale, James Bialac filed a Chapter 11 bankruptcy case. HIC was notified of the bankruptcy filing. HIC proceeded with the sale, not of the entire note, but of the other five-sixth interests in the note. James Bialac's one-sixth interest was preserved. The Ninth Circuit found that the sale of the co-debtors' five-sixths interests in the note, which was not property of Bialac's estate still violated the automatic stay for two reasons. The first reason was that the sale diminished Bialac's one-sixth interest in the note. The second reason was that the sale cut off Bialac's right of redemption. The Ninth

Circuit, in a case of first impression, determined that, while Bialac's interests were not within the literal meaning of Section 362, they should be protected by the automatic stay in order to achieve an orderly disposition of all of the property in which Bialac had an interest. *Id.* at 428, 432.

28. While the bankruptcy code does not define the terms "property" or "interest in property," those terms should be construed broadly to include the debtor's rights and interests at the time of filing. The United States Supreme Court has held that Section 541(a)(1) is a broad, inclusiv definition, not a limitation on which property is included as property of the estate. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, (1983).

29. The Seventh Circuit has held that virtually all of the debtor's property, at the time the bankruptcy petition is filed, becomes property of the bankruptcy estate. *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993). "Every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of §541." *Id.*

30. Excel's sale would be a violation of the automatic stay, even if the Debtor's interest in the collateral is not property of the bankruptcy estate.

### THE COLLATERAL SOLD BY EXCEL ACQUISTIONS, LLC WAS PROPERTY OF THE ESTATE

31. Excel unilaterally determined that 401 Lenders did not have a property interest to be protected and proceeded with its UCC sale.

32. 401 Lenders initially acquired its interest in the collateral sold on or about September 16, 2010. The 401 S. LaSalle Agreement which assigned rights to Guterman Partners Energy, LLC, did not completely divest 401 Lenders of its property rights because the assignment was not absolute and completed.

8

33. 401 Lenders' claim was not properly transferred to Guterman Partners Energy, LLC because Guterman Partners Energy, LLC did not comply with Rule 3003.

34. Under Rule 3003, in a Chapter 11 case, the claims listed on a debtor's liabilities schedules constitute prima facie evidence of the validity and amount of a creditor's claims, unless the claims are scheduled as disputed, contingent, or unliquidated. Fed. R. Bankr. P. 3003.

35. 401 Properties did not list the 401 Lenders' claim as disputed, unliquidated, or contingent on its Schedule D. Under these circumstances, and in accordance with Rule 3003, the amount listed on 401 Properties' Schedule D is deemed to be a proof of claim.

36. Federal Rule of Bankruptcy Procedure 3001(e)(2) states that, "If a claim other than one based on a publicly traded note, bond, or debenture has been transferred other than for security after the proof of claim has been filed, evidence of the transfer shall be filed by the transferee." Fed. R. Bankr. P. 3001(e)(2).

37. In *In re Kreisler*, 331 B.R. 364, 374 (Bankr. N.D. Ill. 2005), this Court stated that:

> Pursuant to Bankruptcy Rule 3001(e)(2), a transferee of a proof of claim that has already been filed must file evidence of the transfer. *In re Wilson*, 96 B.R. 257, 261 (9th Cir. BAP 1988)...For a valid transfer of claim to occur, Bankruptcy Rule 3001(e) must be followed. *In re Hoffman*, 98 B.R. 783, 784 (Bankr.S.D.Ohio 1989) ("[T]he purpose for the rule is to prevent the fraudulent transfer of claims for the purpose of receiving unwarranted dividends and the requirement must be fulfilled."). Indeed, "Rule 3001(e)(2) is more than a simple housekeeping rule.... [F]ailure to file notice of transfer of claim is not a defect which can be cured." *Ellington*, 151 B.R. at 99.

37. Guterman Partners Energy, LLC did not file a proper transfer of the secured claim of 401 Lenders scheduled by 401 Properties as required by Rule 3001(e)(2).

39. 401 Lenders retained an interest in the claim until it was properly and finally transferred in accordance with Rule 3001(e)(2).

9

40. The 401 South LaSalle Agreement is not an absolute assignment by its terms.

The agreement contains the following pertinent provisions:

> "2. Purchase and Sale or Rights. Subject to the terms and provisions set forth in this Agreement, First Party hereby assigns, conveys, grants, and transfers to Second Party all of First Party 's right, title and interest in the LP Loan, the LP Loan Documents and the Property. In addition, and without Second Party assuming any of First Party's obligations under the Lenders Loan, First Party hereby assigns, conveys, grants, and transfers to Second Party all claims of First Party against Bridgeview with respect to First Party's right, title and interest in and to the LP Loan, the LP Loan Documents and the Property. For greater certainty, Second Party does not assume and First Party has not assigned any of First Party's obligations under Lenders Loan
>
> 3. Purchase Price. As partial consideration for First Party's sale of its rights and interests to Second Party as set forth and the other releases and covenants set forth herein, Second Party agrees to pay $100,000 to First Party on the later of: (1) forty-five (45) business days following execution of this Agreement; and (2) Second Party acquiring Bridgeview's interest in the LP Loan and the Lenders Loan. As additional consideration, in the event that Second Party or an affiliate thereof (together, the "Owner") obtains fee title to the Property and thereafter sells the Property to an un related third party, then First Party shall be entitled to the following fee: after the first $13.000,000 of Net Sale Proceeds are received by Owner and distributed to the members thereof in accordance with such Owner's organizational documents, the First Party shall be paid a fee equal to the sum of: (a) the next $900,000 distributed to the Second Party by Owner from the Net Sale Proceeds, plus (b) 40% of any additional Net Sale Proceeds received by Second Party from the Owner. A sale shall not include: (i) a transfer to an affiliate of Owner or Second Party, (ii) a deed in lieu of foreclosure to any lender or party, (iii) any transfer made in connection with a foreclosure or foreclosure sale, or (iv) a transaction in which a portion of any Net Sale Proceeds are not distributed to Second Party. "Net Sale Proceeds" means the amount delineated on the escrow trust disbursement statement as net proceeds to Owner prepared by the closing escrow agent in connection with such closing, taking into account all liabilities of Owner or any other affiliate holding title to the Property.

41. The partial consideration for the assignment has not been received by 401 Lenders. 401 Lenders has not received the purchase price of $100,000.00. Guterman Partners Energy, LLC has not acquired Bridgeview Bank's interest in the loan. In fact, Excel

10

Acquisitions has now acquired Bridgeview's interests in the loan by acquiring Bridgeview's claim number 7.

42. Illinois courts have held that assignments are not valid when no consideration is actually given. *Northwest Diversified, Inc. v. Desai,* 353 Ill. App. 3d 378 (Ill. App., 2004).

43. The 401 South LaSalle Agreement also contains the following provisions:

> "4. <u>Release of Claims</u>. Subject to the terms and provisions set forth in this Agreement and provided Second Party enters into and closes on a transaction in which Second Party acquires any right, title and interest Bridgeview may have in the LP Loan Documents, First Party on behalf of all parties comprising First Party, together with their respective officers, managers, members, partners, heirs, devisees, transferees and assigns, agrees to assert no claim or interest with respect to the Property, the LP Loan or the LP Loan Documents and hereby releases and waives any claim, priority, demand, action, or cause of action, known or unknown relating to the LP Loan Documents, the LP Loan and the Property whatsoever. First Party acknowledges and agrees that First Party will claim no direct, indirect or beneficial interest in the Property or in Second Party or in any interest of Second Party, its successor and/or assign or any affiliate thereof.
>
> 6. <u>Covenant Not to Sue.</u> Except for Second Party's breach of this Agreement, First Party agrees that First Party shall never sue, file any proceeding, inhibit, or otherwise encumber Second Party, any affiliate or Second Party or the Property.

44. Based upon the terms of the 401 S. LaSalle Agreement, in the event that Guterman Partners Energy, LLC does not complete the transfer and deliver the purchase price, 401 Lenders has not released its claims and retains the right to sue Guterman Partners Energy, LLC. Contrary to Excel's position that the only remedy is a breach of contract claim for damages, 401 Lenders can also bring an action for rescission. An action for rescission is appropriate if there is no adequate remedy at law. Rescission results in an outright cancellation of the contract which would restore the status quo and return all of the assigned rights to 401 Lenders.

45.    If a contract exists at the time of the filing of a bankruptcy petition, then the underlying contract rights become property of the estate. *In re Sherlock Homes of W.N.Y., Inc.*, 246 B.R. 19, 23 (Bankr. W.D.N.Y. 2000). Claims that arise from contracts entered into by the debtor before filing for bankruptcy have been held to be within the reach of Section 541. *Hoseman v. Weinschneider*, 277 B.R. 894, 899 (N.D. Ill. 2002).

## RELIEF SOUGHT BY THE DEBTOR

46.    401 Lenders had property and contract rights that were property of the estate and protected by the automatic stay. Excel violated the automatic stay in a willful manner when it elected to proceed with the UCC sale.

47.    Debtor requests that the court grant it appropriate relief for Excel's violation of the automatic stay, including:

    a.    voiding the UCC sale that took place on November 24, 2015;

    b.    voiding the transfer of Excel's Notice of Transfer of Claim No. 10 in the 401 Properties case;

    c.    awarding 401 Lenders costs and reasonable attorney's fees;

    d.    granting 401 Lenders any other relief that the court deems proper and just.

    401 LaSalle Lenders
    By: _/s/Karen J. Porter_____
    One of its Attorneys

Karen J. Porter
(Atty No 6188626)
**PORTER LAW NETWORK**
230 West Monroe, Suite 240
Chicago, IL 60606
Phone: (312) 372-4400
Fax: (312) 372-416